475 So.2d 678 (1985)
THE FLORIDA BAR, Complainant,
v.
Richard Ellis GENTRY, Respondent.
No. 66238.
Supreme Court of Florida.
August 29, 1985.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and David G. McGunegle, Bar Counsel, Orlando, for complainant.
Richard Ellis Gentry, St. Augustine, in pro. per.
PER CURIAM.
This disciplinary proceeding by The Florida Bar against Richard Ellis Gentry, a *679 member of The Florida Bar, is presently before us on complaint of The Florida Bar and report of referee. Pursuant to article XI, Rule 11.06(9)(b) of the Integration Rule of The Florida Bar, the referee's report and record were duly filed with this Court. No petition for review pursuant to article XI, Rule 11.09(1) of the Integration Rule of The Florida Bar has been filed.
Having considered the pleadings and evidence, the referee found as follows:
As to Count I:
1. Respondent represented Imogene Schmidt in her personal injury case stemming from an automobile accident beginning in April, 1983. The representation was on a contingency fee basis with one-third to be paid to respondent if no suit was filed and 40% if suit were filed.
2. In late July, 1983, respondent received two checks totaling $10,000.00 representing his client's personal injury protection (PIP) benefits from her carrier. Respondent had his client sign these checks, placed the $4,000.00 check payable to Ms. Schmidt into his trust account and returned the other to the carrier to be reissued since it had been made out to the hospital and Ms. Schmidt jointly. This was done at the client's request so that she would have the immediate benefits available to her for living expenses.
3. When the reissued check was received, respondent gave his client $3,000.00 in six $500.00 cashiers checks and took $3,000.00 as an advance on his fee. During the ensuing months, respondent handled some $4,000.00 of her living expenses through his trust account at her request.
4. The noncontingent PIP benefits were paid over without undue hesitation on the part of the insurance company and only after minimal contracts by respondent.
5. Ultimately, the hospital filed suit for their unpaid bills totaling in excess of $10,000.00 which the respondent later settled for a total of $8,500.00 which included the hospital attorney's fee at time of her accident case settlement in April, 1984.
6. By opinion dated March 8, 1984, in The Florida Bar v. Gentry, 447 So.2d 1342 (Fla. 1984), the respondent was suspended for a period of six months with proof of rehabilitation required effective in 30 days. Respondent previously had filed suit for his client in late 1983 against the driver and State Farm Insurance Company. He reached a settlement of the case which was signed on April 5, 1984. It called for a lump sum payment of $45,000.00 and monthly tax-free payment of $400.00 a month for eight years of Ms. Schmidt. The extended value over the period of the monthly payments was $38,400.00 which cost the insurance company some $26,732.00. The cost was not divulged to respondent despite his request for that information.
7. This was the first structured settlement respondent has handled. In disbursing the proceeds, the respondent paid the hospital bill and himself $33,693.33 which included $33,360.00 as a 40% fee on $83,400.00. The remaining $333.33 was the amount necessary to bring the fee charged on the PIP up to one-third of the $10,000.00. The client received $707.59 in cash plus the monthly payments.
8. Respondent's fee of $3,333.33 for recovery of personal injury protection benefits under Section 627.736 Florida Statutes was based solely on the labor of diverting the payee of the $10,000.00 personal injury protection benefits from the hospital/doctor to his client Imogene Schmidt... .
9. It was unfair or excessive to charge an attorney's fee for personal injury protection benefits as to this client because the statute itself provides for reasonable attorney's fee if there is a dispute... .
10. By not reducing the fee on the structured settlement to present value, the Respondent's fee was excessive in the amount of $4,668.20 (Based on subtracting *680 the difference of 40% of $38,400.00 and 40% of $26,732.00)... .
11. The community standard of lawyers practicing in personal injury is that you charge a percentage of the present value of the settlement of the claim....
As to Count II:
1. Review of respondent's trust account reflects he maintained an interest-bearing trust account at the Security First Federal Savings and Loan Association in Daytona Beach, Florida.
2. The account was opened to earn interest for the benefit of one client in late November or early December, 1982. Said client's funds were expended approximately by the end of March, 1983 and respondent continued to utilize said account until his suspension although he is not a member of the Interest on Trust Accounts Program. The interest generated has remained in the account.
3. Respondent was unable to provide copies of his monthly bank statements for at least three months in 1983 and one month in 1984.
4. Respondent did make some reconciliations although they are not completely identified as to which particular time periods. Respondent did not provide any client ledger cards. He only provided six office deposit slips and six bank deposit slips whereas the bank statements provided list twenty-six deposits. Three checks issued in 1983, two of which were voided, were missing and copies of check stubs 233 through 239 were not furnished.
5. Two checks to respondent on April 5, 1984 do not identify the client matter although they probably relate to the Schmidt case. Further, cancelled checks and corresponding stubs do not always reflect the client matters to which they pertain.
6. Although respondent checked his July 1, 1983 dues statement indicating he had read the trust accounting rules and was familiar with their requirements, he was not maintaining the trust account in accordance with provisions of Fla. Bar Integr. Rule, art. XI, Rule 11.02(4)(c) and the corresponding Bylaw.
As to Count III:
1. Respondent was retained in December, 1983 by John R. Castellana to assist him in securing his driver's license which had been revoked for five years on May 27, 1983.
2. Mr. Castellana returned to the respondent's office in early March, 1984, was quoted a fee of $750.00 and paid $200.00 in cash. He had a short third visit with the respondent but then lost contact with him primarily due to respondent's suspension. Respondent then turned the file over to another attorney without telling Mr. Castellana. Note, it would appear that no action could be taken on Mr. Castellana's behalf until May 27, 1984 when he would be eligible to petition for relief.
3. Respondent did not send a copy of his suspension order to Mr. Castellana or otherwise notify him. He also failed to provide the affidavit as is required by Fla. Bar Integr. Rule, art. XI, Rule 11.10(7) to the Florida Bar either personally or through counsel.
4. Respondent accepted a partial retainer and thereafter failed to undertake any effective steps for his client, to notify him of his suspension or to secure his permission prior to turning his file over to another attorney. Respondent did return the retainer subsequent to the grievance committee hearing on November 2, 1984.
The referee recommends that respondent be found guilty of violating Disciplinary Rule 2-106(A) of the Code of Professional Responsibility as well as Rule 11.02(4) of the Integration Rule of The Florida Bar as to Count I; violating Rule 11.02(4)(c) of the Integration Rule of The Florida Bar and By-Law for Section 11.02(4)(c) effective until June 30, 1984 as to Count II; and violating Disciplinary Rules 1-102(A)(6) and 6-101(A)(3) of the Code of Professional Responsibility as to Count III. The referee further recommends that respondent be placed on probation for a term of eighteen *681 (18) months pursuant to Integration Rule 11.10(1) with the following conditions:
(1) The respondent shall refund to Imogene Schmidt that part of the fee that was excessive or clearly excessive: $8,001.53;
(2) The respondent shall be required to attend a complete seminar on trust accounting with a certificate of compliance therewith being filed with Staff Counsel of The Florida Bar;
(3) The respondent shall submit to The Florida Bar a plan for treatment of his alcoholism and continue in his treatment under that plan; and
(4) The respondent shall be subject to the supervision of a member of The Florida Bar designating personal injury and wrongful death as his specialty when the respondent charges or collects a continguency fee for a structured settlement.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly, respondent, Richard Ellis Gentry, is to be placed on probation, with the above conditions, for a term of eighteen (18) months, with said probation to commence upon respondent's reinstatement to the practice of law.
Judgment for costs in the amount of $486.10 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
ADKINS, and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.